UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| FISCHER FARMS,<br>A General Partnership<br><br>Plaintiff,<br>vs.<br><br>BIG IRON AUCTION COMPANY, INC.<br>A Nebraska Corporation<br><br>Defendant. | CIV 19-4111<br><br>MEMORANDUM OPINION AND ORDER DENYING MOTION TO TRANSFER VENUE AND MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiff, Fischer Farms is a South Dakota general partnership with its principal place of business near Wagner, South Dakota. Doc. 1, ¶ 1. Defendant Big Iron Auction Company, Inc. ("Big Iron"), is a Nebraska corporation with its principal place of business in St. Edward, Nebraska. Doc. 1, ¶ 2; Doc. 9, ¶ 5.

On or around January 29, 2019, Fischer Farms and Big Iron entered into a written Online Auction Listing & Marketing Agreement ("the Written Agreement"). Doc. 1, ¶ 11. Per the Written Agreement, Big Iron was to perform an online auction for some of Fischer Farms' farm equipment. Doc. 1, ¶ 12.

Prior to signing the Written Agreement, District Manager for Big Iron, Todd Enke ("Enke") visited Fischer Farms to meet in person, see the farm, and the equipment. Doc. 1, ¶ 13. Enke and two of Big Iron's independent sales representatives, Darin Pick ("Pick") and Tim Borer ("Borer") were present at this meeting. Doc. 9, ¶ 9. Fischer Farms alleges that during this meeting, Enke told Fischer Farms that it would be allowed to bid on its equipment if the sale price was not high enough. Doc. 1, ¶ 13. Both Pick and Borer reside and maintain home offices in Nebraska.[1] Doc. 9, ¶ 13.

After signing the Written Agreement, but prior to the auction sale, Lynn Fischer ("Fischer"), a partner with Fischer Farms, had concerns about whether the sale would bring fair value for the equipment. Doc. 1, ¶ 14. It is alleged that Enke assured Fischer Farms during a

---

[1] Pick is a resident of Hartington, Nebraska, and Borer resides in Atkinson, Nebraska. Doc. 9, ¶ 14.

1

phone conversation that it could bid on its own equipment, but stated that it would still owe sales commission. Doc. 1, ¶ 16. John and Justin Havranek, personal acquaintances of the owners and operators of Fischer Farms, stated in an affidavit that they were present for and overheard two phone calls in during which Enke confirmed that Fischer Farms could bid on its own equipment, subject to a seven percent commission. Docs. 11-2, 11-3. David Petrik, also a personal acquaintance of the owners and operators of Fischer Farms, stated that he was present and overheard the second phone call in which Enke confirmed that Fischer Farms could bid on its own equipment, subject to a seven percent commission. Doc. 11-4. There is no information in the record stating the residences of the witnesses to the phone conversations or whether Enke was in South Dakota or elsewhere when he received the two phone calls at issue in this case.

Despite the alleged phone conversations, the Written Agreement provides that Fischer Farms would *not* be permitted to bid on its equipment. Specifically, the Written Agreement provided in relevant part:

> 3. <u>Unreserved Auction Terms:</u> Seller understands and acknowledges that Seller is extending an irrevocable offer to sell the Equipment to the highest bidder at the Auction of such equipment. Seller may not set a reserve price for their Equipment. This shall be an absolute Auction, no minimums, no reserves, no one bidding for the Seller, and no buybacks.
>
> 4. <u>Shill Bidding:</u> Seller will not use an alias or collude with others to place bids on any of the Seller's Equipment, including but not limited to Seller's family members. Seller agrees not to bid directly or indirectly, in any capacity whatsoever, nor cause or assist anyone to bid for Seller or on Seller's behalf nor bid as an officer, director, shareholder, partner, proprietor, joint venture, advisor, limited liability company member, consultant, owner, employee or other agent of any third party. Seller understands it is only upon these terms that BigIron will agree to list Seller's Equipment and further understands and agrees that these restrictions are necessary to protect the integrity of the "unreserved auction" or "absolute auction" process and the reputation of BigIron.

Doc. 8.

Although the Written Agreement noted that the auction was to take place on March 13, 2019, the auction was held on April 10, 2019. Doc. 1, ¶ 12. At the auction, Big Iron refused to allow Fischer Farms to bid on its Case-IH combine ("the Combine"), although Fischer Farms alleges that Big Iron allowed Fischer Farms to bid on some of its other equipment. Doc. 1, ¶¶ 7, 17, 24. The Combine was allegedly sold $74,250.00 below its market value. Doc. 1, 8.

2

Big Iron alleged that by bidding on its own equipment, Fischer Farms violated paragraph 3 of the Written Agreement which prohibited Fischer Farms from placing bids on its own equipment. Doc. 1, ¶ 17. Big Iron withheld $64,037.50 from the sale proceeds for the alleged breach of the Written Agreement by Fischer Farms pursuant to the liquidated damages provision in the Written Agreement which provides:

> The Parties hereto agree that should Seller breach the terms of the Agreement, the damages which BigIron might suffer are not reasonably ascertainable because of their indefiniteness or uncertainty. As such, Seller shall pay liquidated damages to BigIron in the amount of 25% of the gross selling price of the Equipment that is sold or 25% of the estimated value of the Equipment that was to be sold, the Parties agreeing that such estimates reflect a reasonable estimate of the damages which would probably be caused by the breach or is reasonably proportionate to the damages which have actually been caused by the breach. In addition, should Seller breach the terms of the Agreement, Seller shall pay the Service Fee, in an amount determined by reference to the table under Section 19 hereof, to BigIron. Should Seller breach the terms of this Agreement, he or she shall also be liable for damages suffered by the Buyer(s) of the Equipment for Seller's failure to perform, and shall indemnify and hold BigIron harmless in accordance with the terms of Section 11 hereof. The Parties agree that this damage provision is in addition to and not in lieu of the service charges that are otherwise due under this agreement.

Doc. 8.

On July 1, 2019, Fischer Farms filed a complaint against Big Iron in this Court alleging breach of contract, fraudulent misrepresentation, conversion and tortious interference with a business relationship[2]. Doc. 1. Fischer Farms seeks an order declaring that the liquidated damages clause in the Written Contract is unenforceable, or, in the alternative, declaring that no breach occurred because Big Iron had agreed that Fischer Farms could bid on its equipment. Doc. 1, ¶ 55. Fischer Farms also seeks to recover the "liquidated damages" that it alleges were wrongfully withheld, actual damages for the below-market selling price of the Combine, and general and punitive damages. Doc. 1, ¶ 10.

On July 29, 2019, defendant Big Iron filed a Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). Doc. 6. Big Iron requests that the Court transfer the case to the United States

---

[2] In its claim for tortious interference with a business relationship, Fischer Farms alleges that, upon information and belief, BankWest holds a lien on Fischer Farms's equipment and the proceeds of its equipment and that by withholding liquidated damages, Big Iron interfered with its business relationship with BankWest. Doc. 1, ¶¶ 41-52.

3

District Court for the District of Nebraska, which Big Iron argues, is the venue mandated by the forum-selection clause in the Written Agreement which provides:

> 17. <u>Jurisdiction and Venue:</u>  This Agreement shall be binding and effective when signed by a representative of BigIron, shall be deemed to have been entered into in Nebraska and shall be governed and construed in accordance with the laws of the State of Nebraska. Seller knowingly and voluntarily consents and submits to the jurisdiction of the State of Nebraska for the purposes of adjudicating all rights and liabilities to the Parties pursuant to this Agreement.

Doc. 8.

On September 5, 2019, Fischer Farms filed a Motion for Partial Summary Judgment on its breach of contract claim. Doc. 13. In its response, Big Iron moves the Court for an order denying, without prejudice, Fischer Farms' Motion for Partial Summary Sudgment, or, in the alternative, deferring further briefing, evidentiary submissions and ruling on the same until such time as Big Iron has been afforded the opportunity to conduct necessary discovery to respond to the motion. Doc. 19.

For the following reasons, Big Iron's Motion to Transfer Venue, Doc. 6, is denied and Fischer Farms's Motion for Partial Summary Judgment, Doc. 13, is denied without prejudice to its refiling.

**LEGAL STANDARD**

Title 28, Section 1404(a) of the United States Code states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[T]he purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

Parties seeking to transfer an action to enforce a forum selection clause must do so using either § 1404(a) or the doctrine of *forum non conveniens*. *BH Services Inc. v. Fce Benefit Adm'rs Inc.*, Civ. No. 16-5045, 2017 WL 3635186, at *3 (Aug. 23, 2017) (J. Schrier) (citing *Atl. Marine*, 571 U.S. at 579-80). "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically

4

bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997); *see also K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 598 (8th Cir. 2011)) ("The defendant has the burden of persuasion in proving all elements necessary for the court to dismiss a claim based on *forum non conveniens*."). The Eighth Circuit has "declined to offer a 'exhaustive list of specific factors to consider' in making the transfer decision[.]" *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (quoting *Terra Int'l*, 119 F.3d at 691). Instead, district courts considering a motion to transfer under § 1404(a) or for *forum non conveniens*, "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).

When the parties have agreed to a valid forum-selection clause, the § 1404(a) analysis is altered in three ways. *Id.* at 581-83. "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 581. Second, a district court may not consider arguments about the parties' private interest, but public-interest factors only. *Id.* at 582 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.") Third, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.*

## DISCUSSION

As stated above, Big Iron has moved to transfer this case to the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1404(a) or, in the alternative, under the doctrine of *forum non conveniens* in order to enforce the forum-selection clause in the Written Agreement. Paragraph 17 of the Written Agreement states as follows:

> 17. <u>Jurisdiction and Venue:</u> This Agreement shall be binding and effective when signed by a representative of BigIron, shall be deemed to have been entered into in Nebraska and shall be governed and construed in accordance with the laws of the State of Nebraska. Seller knowingly and voluntarily consents and submits to the jurisdiction of the State of Nebraska for the purposes of adjudicating all rights and liabilities to the Parties pursuant to this Agreement.

5

In opposition, Fischer Farms argues that the forum-selection clause is permissive and that the Big Iron has not met its heavy burden to show that the District of South Dakota is the wrong forum for this lawsuit. Doc. 10 at 13.

### A. Permissive v. Mandatory Forum Selection Clause

Although the Supreme Court did not distinguish between different kinds of forum selection clauses in its *Atlantic Marine* decision, the Eighth Circuit Court of Appeals recognizes both mandatory and permissive forum selection clauses. *Jet Co., Inc. v. Thor Indus., Inc.*, Civ. No., 16-3005, 2016 WL 1642663 at *3 (N.D. Iowa Apr. 25, 2016) (citing *Dunne v. Libbra*, 330 F.3d 1062, 1063 (8th Cir. 2003)). "Mandatory forum-selection clauses require a case to be brought in an identified venue based on 'specific language indicating the parties' intent to make jurisdiction exclusive.'" *High Plains Const., Inc. v. Gay*, 831 F.Supp.2d 1089, 1102 (S.D. Iowa 2011) (citing *DataCard Corp. v. Softek, Inc.*, 645 F.Supp.2d 722, 729 (D. Minn. 2007)). "Permissive forum-selection clauses, on the other hand, 'constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum.'" *Id.* (quoting *DataCard Corp.*, 645 F.Supp.2d at 729). *Atlantic Marine* discussed a mandatory forum selection clause where "a plaintiff agrees by contract to bring suit only in a specified forum." *Jet Co., Inc.*, 2016 WL 1642663, at *3 (quoting *Atl. Marine*, 571 U.S. at 63). Thus, *Atlantic Marine's* limitations on a § 1404(a) transfer analysis are restricted to cases involving mandatory forum selection clauses. *See, e.g.,. id.; RELCO Locomotives, Inc. v. AllRail, Inc.*, 4 F.Supp.3d 1073, 1085 (S.D. Iowa 2014); *Waste Mgmt. of La., L.L.C. v. Jefferson Parish ex rel. Jefferson Parish Council*, 594 Fed. Appx. 820, 821-22 (5th Cir. Nov. 28, 2014) (declining interlocutory appeal of district court's decision declining to transfer case to enforce a permissive forum selection clause, noting that the vast majority of courts have refused to apply *Atlantic Marine* to permissive forum selection clauses); *Perficient, Inc. v. Priore*, Civ. No. 16-249, 2016 WL 866090, at *3 (E.D. Mo. Mar. 7, 2016); *United States ex el. MDI Servs., LLC v. Fed. Ins. Co.*, Civ. No. 13-2355, 2014 WL 1576975, at *3 (N.D. Ala. Apr. 17, 2014). *But see United Am. Healthcare Corp. v. Backs*, 997 F.Supp.2d 741, 750 (E.D. Mich. 2014) (rejecting defendants' argument that "*Atlantic Marine* does not apply here because this case involves a permissive forum selection clause whereas the forum selection clause at issue in *Atlantic Marine* was mandatory.").

"Whether a forum selection clause is mandatory or permissive is a matter of contract interpretation . . . ." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 922 F.Supp. 1334, 1370 (N.D. Iowa 1996); *M. Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017) ("[A]s a general rule in diversity cases, courts should apply state contract law to decide interpretation questions."). "When contractual language is ambiguous, a court will construe such language against the party preparing the contract, especially where the language is embodied in a preprinted form." *Craig v. Hastings State Bank*, 221 Neb. 746, 750 (Neb. 1986).

Having considered the language of the forum selection clause as a whole, the Court concludes that it is permissive rather than mandatory because there is "no language present that has an ordinary meaning that would suggest exclusivity." *See Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003) (finding permissive a forum selection clause that states: "[t]his agreement shall be governed by and construed and enforced in accordance with the laws of the State of Illinois, and the parties consent to jurisdiction [in] the state court of the State of Illinois."); *Autoridad de Energia Electrica de Puerto Rico v. Ericsson Inc.*, 201 F.3d 15, 18-19 (1st Cir. 2000) (finding clause that stated parties "expressly submits to the jurisdiction of all Federal and State Courts located in the State of Florida" to be "an affirmative conferral of personal jurisdiction by consent, and not a negative exclusion of jurisdiction in other courts."). Because the forum selection clause is permissive, not mandatory, the Court proceeds with the traditional § 1404(a) analysis and not the modified *Atlantic Marine* analysis.

**B. Section 1404(a) Transfer Analysis**

In considering a motion brought under § 1404(a), courts are to balance "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). These factors merit "individualized, case-by-case consideration," in which courts "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

*i.     Balance of Convenience*

"Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964). Therefore, "unless the balance [of these factors] is strongly in favor of the defendant, the

plaintiff's choice of forum should rarely be disturbed." *Reid-Walen v. Hansen*, 933 F.2d 1390, 1394-95 (8th Cir. 1991).

Although not exclusive, factors courts consider when evaluating the convenience of the parties and witnesses are: "(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law." *See Terra Int'l Inc.*, 119 F.3d at 696.

On the whole, the Court finds that the convenience of the parties does not weigh heavily in favor of transfer. Even though the Court finds the forum selection clause at issue in this case to be permissive rather than mandatory, it is still relevant to the Court's consideration of a transfer to the District of Nebraska. *See e.g., Sirius Computer Solutions, Inc. v. Evans*, Civ. No. 11-439, 2012 WL 13055016, at *9 (D. Neb. Apr. 23, 2012) (citing 15 Charles Alan Wright et al., *Federal Practice and Procedure* § 3854.1 (3d ed. 2012) ("[W]hen a forum selection clause is written in permissive rather than mandatory terms, . . . it [is accorded] less weight in the Section 1404(a) analysis.")); *DataCard Corp. v. Softek, Inc.*, 645 F.Supp.2d 722, 732-33 (D. Minn. 2007). Clearly, Fischer Farms contemplated litigation in Nebraska, as it consented to personal jurisdiction there. Furthermore, the parties provided for the application of Nebraska law to the Written Agreement. Thus, while the forum selection clause may not figure "as centrally in the [Court's] calculus" as a mandatory forum selection clause would, it adds strength to Big Iron's position regarding transfer of this action.

However, in assessing the convenience of the parties, courts may also consider the location of the two courthouses and the distances the parties must travel. *See Oien v. Thompson*, 824 F.Supp.2d 898, 903 (D. Minn. 2010); 17 James Wm. Moore, et. al., *Moore's Federal Practice*, § 111.13[1][e][i] (3d ed. 2010) ("The logical starting point for analyzing the convenience of the parties is a consideration of their residences in relation to the district chosen by the plaintiff and the proposed transferee district."). If the case was transferred to Lincoln, Nebraska, Big Iron's commute to the courthouse would be approximately 80 miles less[3] than it

---

[3] The distance from St. Edward, Nebraska (Big Iron's principal place of business) to Sioux Falls, South Dakota, is approximately 188 miles and the distance from St. Edward, Nebraska, to Lincoln, Nebraska, is approximately 107 miles.

8

would be to the Sioux Falls courthouse. However, Fischer Farms's commute would be approximately 125 miles greater if the case was transferred to Lincoln.[4] The calculus does not much differ if the case was transferred to Omaha, Nebraska. To the extent that distance of approximately 55 miles has bearing on the court's consideration of the parties' convenience, the relative distances of the two courthouses weigh against transfer.

The second factor, the convenience of witnesses, is generally considered to be one of the most important factors to be weighed in the venue transfer analysis. *Medicap Pharms., Inc. v. Faidley*, 416 F.Supp.2d 678, 687 (S.D. Iowa 2006); *May Dep't Stores Co. v. Wilansky*, 900 F.Supp.1154, 1165 (E.D. Mo. 1995). "This factor includes consideration of the number of essential non-party witnesses, their location, and the preference of the court for live testimony as opposed to depositions." *Toomey v. Dahl*, 63 F.Supp.3d 982, 993 (D. Minn. 2014). "The party seeking the transfer must identify, typically by affidavit, the key witnesses to be called, state their residence, and provide at least a general summary of what their testimony will cover." *Hylland v. Flaum*, Civ. No. 16-4060, 2016 WL 6901267, at *7 (D.S.D. Nov. 22, 2016) (J. Lange) (quoting 15 Charles Alan Wright et al., *Federal Practice and Procedure* § 3851 (4th ed.)). In evaluating the convenience of the witnesses, the Court "must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." *Reid-Walen*, 933 F.2d at 1396.

The Court finds that the convenience of non-party witnesses is a neutral factor in the Court's analysis. The Court tends to agree with the parties that non-party witnesses testimony will be important to both parties in this case, and for purposes of weighing credibility,[5] the live testimonies of those witnesses is preferable. Big Iron states that two of its non-party witnesses, Darin Pick and Tim Borer, were present in South Dakota at Fischer Farms when it is alleged that Enke told Fischer Farms it would be allowed to bid on its own equipment if the sale price was not high enough. In an affidavit, Big Iron avers that Mr. Pick resides in Hartington, Nebraska, and that Mr. Borer resides in Atkinson, Nebraska. Doc. 9, ¶ 14. In its brief, Big Iron states that Mr. Borer resides outside of the Court's subpoena power, and that as an independent contractor,

---

[4] The distance from Wagner, South Dakota (Fischer Farms's principal place of business) to Sioux Falls, South Dakota, is approximately 107 miles and the distance from Wagner, South Dakota, to Lincoln, Nebraska, is approximately 233 miles.

[5] Even if the breach of contract claim is dismissed on summary judgment, non-party witnesses will be essential to Fischer Farms's fraudulent inducement claim.

9

it likely cannot compel his attendance at trial. Doc. 7 at 8-9. However, in support of its opposition to Big Iron's motion to transfer, Fischer Farms produced affidavits of three individuals who were personal acquaintances of the owners and operators of Fischer Farms. Docs. 11-3; 11-4; 11-5. The individuals aver that they were present during Lynn Fischer's phone calls with Todd Enke and that during these calls, Mr. Enke confirmed that Fischer Farms could bid on its own equipment, but that Fischer Farms would have to pay the seven percent commission. Docs. 11-3; 11-4; 11-5. Although the affidavits produced by Fischer Farms fail to detail where these non-party witnesses reside, the affidavits for all three witnesses were executed in Charles Mix County, South Dakota. Docs. 11-3; 11-4; 11-5. It is defendant's burden as the proponent of the motion to transfer to prove that transfer is warranted and the Court finds that on the whole, the conveniences of the non-party witnesses does not weigh heavily in favor of transfer.

The third factor, accessibility to records and documents, does not weigh heavily in favor of transfer as the primary issue in this case regards alleged statements made by representatives of Big Iron to Fischer Farms. Moreover, while the Written Agreement provides that it is deemed to be executed in Nebraska, documents concerning the nature of Fischer Farms's alleged relationship with BankWest may also be relevant to its tortious interference claim.

The location of where the conduct complained of occurred weighs more heavily against transfer. The alleged representations that form the basis of Fischer Farms's fraudulent inducement claim were allegedly made by Big Iron in South Dakota or during phone conversations. Additionally, Fischer Farms alleges that Big Iron ratified their oral agreement by permitting Fischer Farms to bid on some of its own equipment during the auction in South Dakota.

The fifth convenience factor—the application of each state's substantive laws—is also a neutral factor in this Court's § 1404(a) transfer analysis. Regardless of whether this case is transferred or remains here, South Dakota's choice-of-law rules will ultimately govern which state's substantive law applies. *See Van Dusen*, 376 U.S. at 639 ("[W]here the defendants seek transfer [under § 1404(a)], the transferee district court must be obligated to apply the state law that would have been applied if there had been no change in venue. A change in venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."); *Piper*

*Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n.8 (1981) ("Under *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), a court ordinarily must apply the choice-of-law rules of the State in which it sits. However, where a case is transferred pursuant to 28 U.S.C. § 1404(a), it must apply the choice-of-law rules of the State from which the case was transferred.").

### ii. Interests of Justice

Factors courts consider in evaluating whether the interests of justice warrant transfer include "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l, Inc.*, 119 F.3d at 696.

The Court concludes that judicial economy, comparative costs to the parties of litigating in each forum, each party's ability to enforce a judgment, and obstacles to a fair trial are neutral factors in this Court's transfer analysis. The costs to the parties of litigating in either forum are comparable and there appear to be no obstacles to a fair trial or in a party's ability to enforce a judgment in either the District of South Dakota or the District of Nebraska.

As stated above, the Court does not find that a "conflict of law" exists for purposes of § 1404(a) because even if this case was transferred to the District of Nebraska, South Dakota's choice-of-law analysis would still apply. *See Piper Aircraft Co.*, 454 U.S. at 243 n.8. As such, issues of contract interpretation will likely be decided under Nebraska law pursuant to the choice-of-law provision in the Written Agreement. *Dunes Hosp., L.L.C. v. Country Kitchen Int'l, Inc.*, 623 N.W.2d 484, 488 (S.D. 2001) (quoting *Stockmen's Livestock Exch. v. Thompson*, 520 N.W.2d 255, 257 (S.D. 1994)) ("South Dakota applies the provisions of the Restatement (Second) of Conflicts of Laws in order to resolve questions about which state's laws govern in particular factual situations."); § 187(2) Restatement (Second) of Conflict of Laws (explaining that a choice of law clause in a contract will be enforced unless "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.").

The Court finds that the contract interpretation issues present in this case are fairly straightforward and that there is no real advantage to transferring this case to Nebraska in order to decide local issues of law. In addition, Fischer Farms asserts several torts claims against Big Iron. It is questionable whether these would be governed by the Written Agreement's choice-of-law provision. *See Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, (8th Cir. 2001) (applying Nebraska law to a clause providing that the "agreement shall be governed by and construed in accordance with Illinois law," reasoning that "[w]hile this provision adequately covers disputes concerning how to construe the [agreement], the language is not broad enough to govern the choice of law for the fraudulent concealment claim, which sounds in tort. Although the claim arose out of the circumstances surrounding the formation of the contract, there is no indication in the [agreement] that the parties intended to elect Illinois law as the forum for every contract-related claim.").

On the whole, the Court does not find that Big Iron has proved that the convenience of the parties and witnesses, and the interests of justice strongly favor transfer to the District of Nebraska and outweigh Fischer Farms's choice of forum.

Accordingly, it is hereby ORDERED that:

1) Defendant Big Iron's Motion to Transfer Venue, Doc. 6, is **DENIED**; and
2) Defendant Big Iron's Motion to Deny, or in the Alternative to Defer Ruling on Motion for Partial Summary Judgment, Doc. 19, is **GRANTED**; and
3) Plaintiff Fischer Farms's Motion for Partial Summary Judgment is **DENIED** without prejudice to its refiling after the parties have had an opportunity to conduct discovery.

Dated this 28th day of January, 2020.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK